IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| FARMERS COOPERATIVE SOCIETY, SIOUX CENTER, IOWA,<br><br>    Plaintiff/Counter Defendant,<br><br>vs.<br><br>LEADING EDGE PORK, LLC,<br><br>    Defendant/Counter Claimant. | No. 16-CV-4034-LRR<br><br>**ORDER** |

_____

## *I.     INTRODUCTION*

    This matter is before the Court pursuant to plaintiff Farmer Cooperative Society's (FCS) Motion for Leave to File a Second Amended Complaint and Add an Additional Defendant. Doc. 29. FCS seeks to add Brent Legred (Legred) as a defendant in Count IV, and assert a claim against him in Count V based on a personal guaranty. Doc. 29-1, at 5-7. Leading Edge Port, LLC (Leading Edge) resists the motion to amend. Doc. 35. For the reasons that follow, the Court grants in part and denies in part FCS's motion to amend its complaint.

## *II.     PROCEDURAL BACKGROUND*

    FCS originally sued Leading Edge in a two-count state court petition, alleging defendant breached a contract by failing to pay for hog feed and seeking declaratory

judgment. Doc. 3. Leading Edge removed the case to this Court based on diversity of citizenship jurisdiction. Doc. 2.

On July 28, 2016, the Court entered a Scheduling Order and Discovery Plan which, among other things, established a September 22, 2016, deadline for filing motions to amend pleadings and add parties. Doc. 12.

On September 22, 2016, FCS filed an unresisted motion to amend its complaint to add a third count making a claim for attorney's fees and costs. Doc. 18. The Court granted the motion (Doc. 20), and the amended complaint was filed (Doc. 21).

On October 14, 2016, the Court held a telephonic status conference with the parties during which the parties raised a request to amend the scheduling order. Doc. 26. On October 19, 2016, the parties submitted a proposed amended Scheduling Order and Discovery Plan (Doc. 28); and, on the same day, FCS filed the instant Motion for Leave to File a Second Amended Complaint (Doc. 29).

On October 31, 2016, the Court entered an amended Scheduling Order and Discovery Plan which, in pertinent part, extended the deadline for filing motions to amend pleadings and add parties to November 1, 2016. Doc. 33.

### III. STANDARD FOR GRANTING MOTIONS TO AMEND

Federal Rule of Criminal Procedure 15 provides that leave to amend shall be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). Courts view motions to amend filed before the deadline set out in the scheduling order with a "liberal policy favoring amendments." *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (citing *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1090 (N.D. Cal. 2007)); *see also Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 976 (8th Cir. 2013) (describing the standard as "liberal"). "But parties do not have

2

an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (citing *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)); *see also Hammer v. City of Osage Beach, MO*, 318 F.3d 832, 844 (8th Cir. 2003) (holding that there is no right to amend pleadings). The Rule 15(a) standard is discretionary, and leave should only be denied "'where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quoting *Hammer*, 318 F.3d at 844) (internal quotation marks omitted). *See also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557-58 (8th Cir. 2006) (holding that a court may deny a motion to amend where there was "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.") (internal citation omitted).

## IV. DISCUSSION

Leading Edge argues the Court should deny FCS's motion to amend because Counts IV and V are futile. Leading Edge argues that Count IV of the proposed amended complaint fails to allege facts establishing that Legred was a party to a contract between FCS and Legred's limited liability company, Leading Edge, which would make him personally liable for a contractual debt owed by his limited liability company. Doc. 35, at 7-8. Leading Edge also argues that Count V of the proposed amended complaint fails to allege facts establishing that Legred executed and breached a personal guaranty to pay Leading Edge's feed account. *Id.*, at 8-10. To resolve this motion, the Court must determine if FCS's proposed additional claims state a cause of action for which

relief may be granted. This requires the Court review the allegations contained in the proposed complaint, determine the applicable law, and evaluate whether the facts alleged in the proposed counts state a claim.

### A. Standard for Determining if a Claim is Futile

An amendment is futile if "'the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedures.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). *See also In re Senior Cottages of Am.*, LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (stating that denial of leave to amend based on futility is appropriate in the face of a legal finding that the proposed complaint could not survive a Rule 12 motion). Accordingly, this Court must determine under the Rule 12(b)(6) standard if plaintiff's proposed amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a motion to dismiss under Rule 12(b)(6), the Court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court need not, however, accept as true wholly conclusory allegations. *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). Nor is the Court obligated to accept legal conclusions drawn by a party from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### B.     *The Allegations in the Proposed Claims*

To resolve this issue, the Court must first review the proposed Counts IV and V of FCS's proposed amended complaint.

FCS's current complaint alleges, in pertinent part, that Leading Edge "is a Minnesota limited liability company with its principle place of business in Bricelyn, Minnesota, but has been doing business in Iowa and growing hogs in western Iowa counties." Doc. 21, ¶2. "FCS is in the business of selling livestock feed and other agricultural supplies." *Id.*, ¶5. Leading Edge "is in the business of raising and growing hogs . . . ." *Id.*, ¶6. "On or about July 2, 2014, Leading Edge entered into an agreement with FCS for FCS to supply feed for hogs on an on-going credit basis in exchange for payment." *Id.*, ¶7. "The parties are legal entities with legal capacity to enter into the contract." *Id.*, ¶9. "The contract was entered by persons acting for the entities who had actual and apparent authority to so act for the parties in this transaction." *Id.*, ¶10. "FCS furnished Leading Edge with said feed pursuant to their agreement." *Id.*, ¶13. "Leading Edge breached its duties by failing to fully pay for or provide the required payments for feed it received from FCS." *Id.*, ¶14.

Proposed Count IV makes the following allegations. "Brent Legred owns and/or controls Leading Edge Pork, LLC" and also "owns Leading Edge Pork of Bricelyn, LLC and may own other entities all using the name, Leading Edge Pork." Doc. 29-1, ¶ 36. "FCS has now discovered that Brent Legred has multiple corporate entities using Leading Edge Pork as part of his overall business enterprise operating under the name 'Leading Edge Pork.'" *Id.*, ¶37. "In connection with opening a feed account and obtaining credit from FCS for that account, Brent Legred represented that his activities to grow pigs to market weight, and thus the owner of pigs expected to receive and consume feed brought from FCS, would be Leading Edge Pork, LLC. However, the pre-printed

5

checks making the payments for the feed ordered on the feed account list the name, Leading Edge Pork, without any indication if the payment is from Leading Edge Pork, LLC or any other entity that Brent Legred owns and operates as part of his 'Leading Edge Pork' enterprise. Although Leading Edge Pork, LLC was represented to be the hog owner ordering feed on credit, the feed was actually paid for by Mr. Legred's the [sic] 'Leading Edge Pork' enterprise." *Id.*, ¶38. "Accordingly, Brent Legred, d/b/a Leading Edge Pork is liable for the unpaid feed account that is the subject of Counts I, II, and III, above, and FCS is entitled to a judgment for its damages from the refusal to pay that feed account against Brent Legred, d/b/a Leading Edge Pork." *Id.*, ¶ 39. The Court notes that paragraph 38 states a legal conclusion and not fact.

Regarding Count V, FCS alleges that "[i]n connection with obtaining credit for Leading Edge to buy feed from FCS, Brent Legred executed a personal guaranty to pay the feed account of Leading Edge." Doc. 29-1, ¶41. "Relying on the personal guaranty, FCS manufactured and delivered feed to Leading Edge and Leading Edge hogs consumed the feed so ordered and delivered. As such guarantor, Brent Legred is personally liable to pay the Leading Edge feed account that is the subject matter of Counts I, II, III and IV, of this action." *Id.*, ¶42. The Court notes that the last sentence of paragraph 42 states a legal conclusion and not fact.

### C. *Whether Count IV is Futile*

Leading Edge argues that FCS's proposed Count IV is futile because the law does not permit suit against a member of an LLC for breach of a contract to which the LLC, but not Legred, was a party.

In order to determine whether FCS has stated a claim for which relief can be granted in proposed Count IV, the Court must first determine what law applies in this

diversity action. To begin with, the Court applies Iowa's conflict-of-laws rules to determine what state's law applies. *See Jones ex rel. Jones v. Winnebago Indus., Inc.*, 460 F. Supp. 2d 953, 964 (N.D. Iowa 2006) ("The court agrees with the parties that, in a diversity action such as this, to determine what state's law applies to the plaintiff's claims, the court must use the choice-of-law of the forum state, in this case, Iowa."). It is necessary to determine which state's law applies to resolve whether FCS may sue a member of a limited liability company for the contractual obligations of the limited liability company.

In this case, both the forum state of Iowa and the interested state of Minnesota apply the general rule that a member of a limited liability company is not liable for the acts of the company. *See* Iowa Code § 489.304 ("1. For debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise all of the following apply: a. They are solely the debts, obligations, or other liabilities of the company. b. They do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager."); Minn. Stat. § 322B.303 ("[A] member, governor, manager, or other agent of a limited liability company is not, merely on account of this status, personally liable for the acts, debts, liabilities, or obligations of the limited liability company.").

Similarly, both Iowa and Minnesota law provide essentially the same elements for breach of contract. To state a breach of contract claim under Iowa law, plaintiff must allege: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that plaintiff performed all of the terms and conditions required of it under the contract; (4) the defendant breached the contract; and (5) plaintiff suffered damages. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). Under

Minnesota law, a breach of contract claim must allege: (1) formation of a contract; (2) the plaintiff performed any conditions precedent to demand the defendant's performance of the contract; (3) breach of the contract by the defendant. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Therefore, because the laws of both Iowa and Minnesota are in harmony with regard to the personal liability of a member of a limited liability company and breach of contract, there is no conflict of law in this case.

The complaint alleges that the contract was between FCS and Leading Edge, a limited liability company. Applying Iowa law regarding the liability of LLC members for contracts entered into by and LLC, I find FCS's proposed Count IV futile. FCS's proposed Count IV fails to allege facts which would establish that Legred was personally a party to the contract which FCS alleges Leading Edge breached. Under Iowa law, an LLC entity enables members to limit their personal liability. *See* Iowa Code § 489.304 (2011). Legred's status as owner, member, or officer of Leading Edge does not make him liable for its debts and obligations. *See* Iowa Code § 489.104 (2011) (a "limited liability company is an entity distinct from its members."). FCS's proposed Count IV against Legred, in his individual capacity, fails to meet the *Twombly/Iqbal* standard. That is, the amended complaint would be subject to summary dismissal on a motion by Legred for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

That is not to say that an individual member of an LLC may never be sued in his or her individual capacity. For example, if an LLC is a mere shell, serving no legitimate business purpose, and used primarily as a means to perpetuate a fraud, then a party may "pierce the corporate veil" of an LLC to reach the individual member behind it. *See*, *e.g.*, *Keith Smith Company, Inc. v. Farmer Grown Poutry, LLC*, No. 15-0347, 2015 WL 8364910, at *6 (Iowa App. Dec. 9, 2015) (discussing piercing the corporate veil of a

8

LLC); *Northeast Iowa Co-op. v. Lindaman*, No. 13-0297, 2014 WL 69605, at *8 (Iowa App. Jan. 9, 2014) (same). "Piercing the corporate veil is a common-law equitable remedy whereby an entity's corporate form is disregarded to prevent an injustice." *Hok Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007). To pierce a corporate veil, a party must show the company is a shell by, for example, showing the company is undercapitalized, lacks separate books, comingles finances with the individual, is used to promote fraud, fails to follow formalities of a separate company, or generally is simply a sham. *Keith Smith*, 2015 WL 8364910, at *6.

In argument during the hearing on the present motion, FCS made statements implying it believes Leading Edge is a shell. The proposed amended complaint, however, does not allege facts that would, accepted as true, state a basis for piercing the corporate veil. In FCS's proposed Count IV, it merely alleges that Leading Edge paid for the feed using a check that did not explicitly include the letters "LLC" on the face of the check after the words "Lead Edge Pork." This is insufficient, without more, to show that the LLC is a sham sufficient for the exceptional circumstances necessary to pierce the corporate veil. Even if a party other than Leading Edge paid for seed, that fact does not mean the LLC is a sham with no legitimate business purpose. *Contrast Damon v. Groteboer*, No. 10-92 (JRT/FLN), 2010 WL 6067573, at *7-8 (D. Minn. Sept. 27, 2010) (denying motion to dismiss complaint against individual members of LLC, finding the complaint alleged facts sufficient to state a claim for piercing the corporate veil). "While counsel may have intended to state a cause of action, *Twombly* does not require [the Court] to divine what is in the mind of the plaintiff. Instead, [the Court] must look to the pleadings and discern whether the complaint states enough facts that plausibly leads to a cause of action." *Zutz*, 601 F.3d at 852. Here, I find the proposed Count IV does not state enough facts that plausibly leads to a claim sufficient to pierce

the corporate veil of Leading Edge Pork LLC so as to allow FCS to sue Legred in his individual capacity for contractual obligations incurred by the LLC.

### D. *Whether Count V is Futile*

Leading Edge argues that Count V is also futile because FCS did not allege "factual allegations on which to rely in evaluating the validity, or the existence, of a personal guaranty from Legred." Doc. 35, at 9. Leading Edge also alleges proposed Count V is futile because it does not specifically allege that Legred breached the alleged guaranty. *Id*.

Reading FCS's proposed Second Amended Complaint in its entirety, and taking as true the allegations of fact contained in it, the Court finds the proposed Count V alleges sufficient facts to avoid summary dismissal under the *Twombly/Iqbal* standard, pursuant to Rule 12(b)(6). Proposed paragraph 41 states that "[i]n connection with obtaining credit for Leading Edge to buy feed from FCS, Brent Legred executed a personal guaranty to pay the feed account of Leading Edge." Doc. 29-1, ¶7. The proposed complaint previously alleged that FCS fulfilled its obligations of providing feed, but that it has not been paid for the feed. 29-1, ¶¶ 14-18. The first sentence in paragraph 42 in the proposed Count V repeats that same allegation. Taken together, these allegations sufficiently claim the existence of a personal guaranty that Legred did not honor.

Leading Edge argues that paragraph 41 "is akin to a bald assertion that the parties 'entered into a binding contract'" and merely states a legal conclusion. The Court disagrees. Paragraph 41 alleges Legred executed a personal guaranty to pay Leading Edge's feed account. Whether it is binding and enforceable may be challenged in this litigation, but that he executed a document purporting to guaranty payment of Leading Edge's feed account obligation is an assertion of fact which this Court must accept as

true. Moreover, the proposed Second Amended Complaint, read as a whole, sufficiently alleged a breach. The complaint asserts that FCS has not been paid for the feed it supplied. That implies both that Leading Edge has not paid the bill and that Legred has not honored his alleged guaranty to cover the debt.

Accordingly, the Court finds that the cause of action set forth in the proposed Count V could withstand a motion to summary dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### V. *MAGISTRATE JUDGE'S AUTHORITY*

Although neither party has raised the issue, the Court finds it appropriate to address its authority to enter this order, as opposed to issuing a Report and Recommendation to the District Court. A magistrate judge may not enter a final ruling on dispositive motions, pursuant to the authority conferred in Title 28, United States Code, Section 636(b)(1). Although there is some dispute among the federal courts as to whether a motion to amend a complaint is a dispositive motion or a nondispositive motion, "[t]he weight of authority holds that motions to amend pleadings are non-dispositive matters which may be referred to a magistrate judge and reviewed by the district court under the 'clearly erroneous standard.'" *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (internal citation omitted). *See, e.g.*, *Reeves v. DSI Sec. Servs., Inc.*, 395 Fed. App'x 544, 548 (11th Cir. 2010) ("A district court may also designate a magistrate judge to rule on certain non-dispositive pretrial motions, such as a motion to amend a complaint."); *Palmore v. Hicks*, 383 Fed. App'x 897, 899-900 (11th Cir. 2010) ("An order disposing of a motion to amend is a non-dispositive pretrial ruling.") (citing cases); *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) ("The district judge correctly held that the magistrate judge's denial of Hall's motion to amend his complaint

was nondispositive, subject only to review for clear error."); *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 660 (7th Cir. 1998) (acknowledging magistrate judge was authorized to rule on motion for leave to file third amended complaint); *Morrissey v. ASD Shared Servs., LLC*, 1:12-CV-4345-CAP-AJB, 2013 WL 11330647, at *2 n.2 (N.D. Ga. Sept. 3, 2013) (holding that a motion to amend a complaint is not a dispositive motion); *Knox v. Rhodes*, No. 08-cv-277-JPG, 2010 WL 1444875, at *1 (S.D. Ill. April 9, 2010) (same); *Wilson v. City of N.Y.*, No. 06–CV–229 (ARR)(VVP), 2008 WL 1909212, at *3–4 (E.D. N.Y. Apr. 30, 2008) (same and collecting cases). Further, nowhere in Federal Rule of Civil Procedure 72(a), and Local Rule 72.1, is it expressed or implied that magistrate judges are without authority to deny leave to amend a complaint. *See also United States v. Brunsman*, Nos. 1:11–cr–014, 1:13–cv–120, 2013 WL 3867233, at *1 (S.D. Ohio July 25, 2013) (holding that magistrate judge did not act *ultra vires* in denying a motion to amend).

Accordingly, the undersigned concludes that a magistrate judge has authority to rule on a motion to amend a complaint, and therefore, resolves FCS's motion for leave to amend by order.

## VI.   CONCLUSION

In summary, the Court finds that FCS's proposed Count IV against Legred in his individual capacity fails to meet the *Twombly/Iqbal* standard. That is, the amended complaint would be subject to summary dismissal on a motion by Legred for "failure to state a claim upon which relief can be granted." Therefore, proposed Count IV is "futile." On the other hand, the Court finds that the cause of action set forth in the proposed Count V could withstand a motion to dismiss under Rule 12(b)(6) of the Federal

Rules of Civil Procedure. Accordingly, that portion of the motion for leave to file a second amended complaint cannot be denied on the basis of futility.

Given that the Court has found part of the proposed amended complaint futile, while the other part not futile, the appropriate remedy is for the Court to allow FCS to recast its complaint in a manner consistent with this order. *Asbury Square, LLC v. Amoco Oil Co.*, 396 F. Supp. 2d 1009, 1012 (S.D. Iowa 2005).

FCS's Motion for Leave to File Second Amended Complaint (Doc. 29) is, therefore, **GRANTED** in part and **DENIED** in part as follows:

1. FCS will be permitted to assert the cause of action currently alleged in Count V of its proposed Second Amended Complaint;

2. FCS will not be permitted to amend its complaint to assert a claim against Legred in his individual capacity.

3. Not later than ten (10) days following the entry of this Order, FCS may file an amended complaint which is consistent with this Order.

**IT IS SO ORDERED** this 23rd day of November, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa